UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROBERT R.D. CALLIOUX,

                Petitioner,

    v.

CHERYL STRANGE,

                Respondent.

CASE NO. 2:24-cv-00687-BHS-GJL

REPORT AND RECOMMENDATION

Noting Date: November 18, 2024

The District Court has referred this action to United States Magistrate Judge Grady J. Leupold. Petitioner Robert R.D. Callioux, proceeding with retained counsel, filed a federal habeas petition pursuant to 28 U.S.C. § 2254, seeking relief from his state court convictions and sentence. *See* Dkt. 3. Petitioner has raised one ground for relief.

After considering the record, the Court concludes the state courts' adjudication of the one ground raised in the Petition was not contrary to, nor an unreasonable application of, clearly established federal law. Therefore, the Court recommends the Petition be **DENIED** and a certificate of appealability not be issued.

REPORT AND RECOMMENDATION - 1

# I.  BACKGROUND

A.  Factual Background

On September 7, 2022, in the Superior Court of Washington for King County ("trial court"), following a jury trial Petitioner was found guilty of one count of rape of a child in the first degree and two counts of child molestation in the first degree for abusing his daughter, M.R.Y. Dkt. 11-1 at 2, Ex. 1. The Court of Appeals of the State of Washington ("state court of appeals") summarized the facts of Petitioner's case as follows:

> In July 2019, M.R.Y., who was then 16 years old, disclosed that her father, Callioux, had sexually abused her when she was a child. M.R.Y. later testified that the abuse began when she was four or five years old and stopped when she was about nine-and-a-half years old. M.R.Y., who resided primarily with her mother, recalled that the abuse would occur at night in Callioux's bedroom during M.R.Y.'s alternating weekend visitations to Callioux's apartment.
>
> The State charged Callioux with one count of rape of a child in the first degree and two counts of child molestation in the first degree. It later moved in limine to cross-examine one of Callioux's potential witnesses, D.C., about specific instances of dishonesty, which were the subject of pending charges for theft, false statements, and false reporting, if D.C. were to testify. According to the State's motion, D.C., who is M.R.Y.'s cousin and Callioux's niece, "purport[ed] to have been at [Callioux's] home every weekend [M.R.Y.] was there" and "state[d] that because she was present every weekend [M.R.Y.] was present that [Callioux] could not possibly have sexually abused [M.R.Y.]" It asserted that D.C.'s credibility was "important and at issue," that the State should be allowed to cross-examine her "about her instances of dishonesty pending currently in the courts," and that those instances were "highly relevant ... and more probative than prejudicial."
>
> Callioux objected, arguing through counsel that "on pending cases that have not been adjudicated, we would suggest that they're not appropriate for specific instances and use by the State." The trial court disagreed and granted the State's motion, stating, "I think these are examples of instances of evidence that would fall under [ER] 608."
>
> At trial, Callioux did not call D.C. to testify. M.R.Y. testified that although her cousins would come over to Callioux's apartment occasionally during the years that he was abusing her, they did not come over every weekend that she visited Callioux. Meanwhile, one of Callioux's sisters testified that she could verify that M.R.Y. was never alone with Callioux during any of the times M.R.Y. visited him.

REPORT AND RECOMMENDATION - 2

> Another of his sisters—D.C.'s mother—testified that D.C. was with M.R.Y. every weekend, including overnights, that M.R.Y. visited Callioux.

*State v. Callioux*, 28 Wash. App. 2d 1028 (Wash. Ct. App. 2023); *see also* Dkt. 11-1 at 17–19, Ex. 2.

B.     <u>Procedural Background</u>

    1.     *Direct Appeal*

On November 18, 2022, the trial court sentenced Petitioner to a total confinement of 192 months. Dkt. 11-1 at 6, Ex. 1. Represented by counsel, Petitioner challenged his convictions and sentence on direct appeal, raising three grounds for review. Dkt. 11-3, Ex. 3. The state court of appeals affirmed Petitioner's convictions and sentence on October 2, 2023. Dkt. 11-1, Ex. 2.

Petitioner sought discretionary review by the Washington Supreme Court ("state supreme court"). Dkt. 11-1, Ex. 5. On February 7, 2024, the state supreme court denied the petition for review without comment. Dkt. 11-1, Ex. 6. The state court of appeals issued its mandate on March 4, 2024. Dkt. 11-1, Ex. 7.

    2.     *Federal Petition*

On May 17, 2024, Petitioner initiated this case. Dkt. 1. In his Petition (Dkt. 3), Petitioner raises one ground for relief:

> [Petitioner] was denied a fair trial by the ineffective assistance of defense counsel in failing to subpoena, or call to the stand, the key defense witness after endorsing the witness and advising the court and the State of the intent to call the witness.

Dkt. 3 at 21–22. On September 20, 2024, Respondent filed, and served on Petitioner, an Answer to the Petition. Dkts. 10, 11. Petitioner filed a Traverse on October 2, 2024. Dkt. 13.

//

//

REPORT AND RECOMMENDATION - 3

## II. DISCUSSION

Respondent maintains the state courts' adjudication of the one ground raised in the Petition was not contrary to, or an unreasonable application of, clearly established federal law. Dkt. 10.

A.  <u>Standard of Review</u>

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may not grant habeas relief on the basis of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In interpreting this portion of the federal habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or (2) confronts facts "materially indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court

either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407). Further, review of state court decisions under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

With respect to § 2254(d)(2), a petitioner may only obtain relief by showing that the state court's conclusion was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(d)(2)); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceedings."). The Court presumes the state court's factual findings to be sound unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." *Dretke*, 545 U.S. at 240 (quoting 28 U.S.C. § 2254(e)(1)).

B.   <u>Ineffective Assistance of Counsel (Ground 1)</u>

In his sole ground for relief, Petitioner alleges his counsel was ineffective for failing to call D.C. to testify at trial. Dkt. 3.

The Supreme Court has created a two-part test for determining whether a defendant received ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). First, a defendant must demonstrate his attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient

REPORT AND RECOMMENDATION - 5

performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.* The reviewing court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697.

Under the first prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted).

Under the prejudice prong, a petitioner must establish there is a reasonable probability the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

While the Supreme Court established in *Strickland* the legal principles that govern claims of ineffective assistance of counsel, it is not the role of the federal habeas court to evaluate whether defense counsel's performance fell below the *Strickland* standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Rather, when considering an ineffective assistance of counsel claim on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id*. Under this "doubly deferential" standard, "a federal court may grant relief only if *every* 'fairminded juris[t]' would agree that *every* reasonable lawyer would have made a different decision." *Dunn v. Reeves*, 594 U.S. 731, 739–40 (2021) (quoting *Harrington*, 562 U.S. at 101) (emphasis in original). As the Supreme Court explained in *Harrington*, "[a] state court must be granted a deference and latitude

REPORT AND RECOMMENDATION - 6

that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.

Here, the state court of appeals considered Petitioner's claim that his trial counsel was ineffective for failing to call a witness and stated:

> Finally, Callioux argues that his trial counsel was ineffective. We disagree.
>
> The Sixth Amendment to the United States Constitution and article 1, section 22 of the Washington State Constitution guarantee the right to effective assistance of counsel. *In re Pers. Restraint of Brett*, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). To prevail on a claim of ineffective assistance, a defendant must establish that (1) his attorney's performance was deficient and (2) the deficiency prejudiced him. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). "Because both prongs of the ineffective assistance of counsel test must be met, the failure to demonstrate either prong will end our inquiry." *State v. Johnson*, 12 Wn. App. 2d 201, 210, 460 P.3d 1091 (2020).
>
> Here, Callioux argues that his trial counsel was ineffective for not calling D.C. as a witness. "To prevail on an ineffective assistance claim, a defendant ... must overcome 'a strong presumption that counsel's performance was reasonable.'" *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011) (quoting *Kyllo*, 166 Wn.2d at 862). "A decision not to call a witness is a matter of trial tactics that generally will not support a claim of ineffective assistance of counsel." *State v. Krause*, 82 Wn. App. 688, 697–98, 919 P.2d 123 (1996). But "a criminal defendant can rebut the presumption of reasonable performance by demonstrating that 'there is no conceivable legitimate tactic explaining counsel's performance.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).
>
> Callioux does not rebut the presumption that counsel's decision not to call D.C. as a witness was a reasonable one. As Callioux himself acknowledges, the record does not reveal why defense counsel did not call D.C. to the stand. And "we will not presume deficient performance from a silent record." *State v. Heng*, 22 Wn. App. 2d 717, 744, 512 P.3d 942 (2022), review granted in part, 200 Wn.2d 1025 (2023). Although Callioux asserts that "[t]here was no downside to presenting [D.C.'s] testimony," we cannot know that from this record. As the State points out, it is conceivable that counsel reasonably determined that D.C. would not present as credible. It is also conceivable that defense counsel had reason to believe D.C.'s recollection about her weekends with M.R.Y. was not as unwavering as Callioux represents it would have been [(fn 2: We note that the record does not include a sworn statement or testimony from D.C., and that according to the certification of probable cause, D.C. stated during her interview that "she would pretty much spend the night with [M.R.Y.] almost every other weekend when [M.R.Y.] was with

REPORT AND RECOMMENDATION - 7

[Callioux]." (Emphasis added.))]. In either case, it is further conceivable that defense counsel reasonably believed putting D.C. on the stand would undermine D.C.'s mother's and aunt's testimony in that regard. On this record, Callioux does not rule out conceivable tactical reasons to explain counsel's decision. Consequently, his ineffective assistance claim fails. *Cf. State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018) (ineffective assistance claim failed where record was silent as to counsel's reasons for not objecting and, thus, it was impossible to tell whether any hypothesis as to counsel's reasons was correct).

Callioux cites a number of cases in support of reversal but they each involved counsel's uninformed decision not to call a witness or, in one case, a decision that was unreasonable because it was based on an actual conflict of interest. *See State v. Jones*, 183 Wn.2d 327, 345, 352 P.3d 776 (2015) (counsel failed to interview clearly identified and accessible witnesses); *State v. Robinson*, 79 Wn. App. 386, 399, 902 P.2d 652 (1995) (counsel decided not to call a witness, whom he also represented, due to an actual conflict of interest); *State v. Thomas*, 109 Wn.2d 222, 230–31, 743 P.2d 816 (1987) (counsel failed to investigate his own expert's qualifications, which investigation would have revealed were lacking); *State v. Byrd*, 30 Wn. App. 794, 799, 638 P.2d 601 (1981) (counsel failed to interview a witness); *State v. Jury*, 19 Wn. App. 256, 264, 576 P.2d 1302 (1978) (counsel "made virtually no factual investigation" and "admit[ted] he was unprepared for trial"). Callioux does not show that counsel's decision not to call D.C. was uninformed or the result of a conflict of interest.

Dkt. 11-1 at 24–26, Ex. 2.

When analyzing ineffective assistance of counsel, "the relevant inquiry under *Strickland* is not what defense counsel should have pursued, but rather whether the choices made by defense counsel were reasonable." *Siripongs v. Calderon*, 133 F.3d 732, 736 (9th Cir. 1998).

Here, defense counsel's actions could reasonably be attributed to any number of sound tactical decisions. As the state court of appeals found, counsel could have reasonably determined that D.C. would not make a credible witness or, more specifically, that D.C.'s recollection about her weekends with M.R.Y. was not as resolute as Petitioner believed it would have been. Dkt. 11-1 at 25. The state court also found conceivable that defense counsel reasonably believed putting D.C. on the stand would undermine D.C.'s mother's and aunt's testimony, and therefore chose not to present her as a witness. *Id*.

REPORT AND RECOMMENDATION - 8

      The Court has a strong presumption that counsel's actions were sound trial strategy rather than inappropriate error. *Strickland*, 466 U.S. at 689. And again, because the Court also presumes the state court made a reasonable determination, the Court's presumption that trial counsel acted effectively is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003); *see also Dunn*, 594 U.S. at 739–40; *Harrington*, 562 U.S. at 101.

      Here, Petitioner has not rebutted the presumption that counsel was implementing sound trial strategy. That is, Petitioner has not provided anything to demonstrate that trial counsel's decision not to put D.C. on the stand was in error or that the error changed the outcome of the trial. *Strickland*, 466 U.S. at 694.

      Petitioner attempts to overcome the presumption that counsel's decision not to call D.C. was sound trial strategy by countering that "it is objectively unreasonable that a competent defense counsel would fail to subpoena and call to the stand the only defense witness who was available and prepared to refute all charges and thereby establish reasonable doubt." Dkt. 13 at 3. In support, Petitioner cites several Ninth Circuit decisions finding counsel ineffective for failing to present testimony or evidence that refutes the allegations against the defendant. *See* Dkt. 3 at 45–52 (citing *Luna v. Cambra*, 306 F.3d 954 (9th Cir. 2002); *Hart v. Gomez*, 174 F.3d 1067 (9th Cir. 1999); *Lord v. Wood*, 184 F.3d 1083 (9 Cir. 1999); *see also Young v. Washington*, 747 F. Supp. 2d 1213 (W.D. Wash. 2010)). *See also* Dkt. 13 at 4–5. However, although the Ninth Circuit held in *Hart* that "[a] lawyer who fails to adequately investigate, and introduce into evidence [information] that demonstrate[s] his client's factual innocence, or that raise[s] sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance," *Hart*, 174 F.3d at 1070, Petitioner has failed to meet his burden in this case "to

REPORT AND RECOMMENDATION - 9

overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy," *Strickland*, 466 U.S. at 689 (internal quotations omitted).

Initially, from a review of the record, there is no question that, prior to trial, D.C. was a potential witness for the defense and, according to the State, would have provided testimony refuting the allegations. *See* Dkt. 11-1 at 18, Ex. 2. However, as noted by the state court of appeals, the precise nature of D.C.'s testimony was unclear.[1] *Id*. at 18, 25 n.2. Moreover, as the state court posited, if D.C. had testified, the State could have called her credibility into question by cross-examining her on two prior theft convictions, which Petitioner agreed were admissible. *Id*. at 21. And lastly, D.C. was notably not the only witness to provide evidence refuting the allegations. At trial, defense counsel presented two witnesses, D.C.'s aunt and mother, who testified that, (1) "M.R.Y was never alone with [Petitioner] during any of the times M.R.Y. visited him," and (2) "D.C. was with M.R.Y. every weekend, including overnights, that M.R.Y. visited [Petitioner]," respectively. *Id*. at 19.

Given the nature of D.C.'s testimony and the fact that she was subject to impeachment by her prior felony convictions for theft, as well as the fact that the jury heard from other witnesses refuting the allegations, counsel's decision to not call D.C. was sound trial strategy. Petitioner has not demonstrated that counsel's actions did not constitute sound trial strategy, much less that D.C.'s testimony would have raised a reasonable probability that the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694.

---

[1] The state court of appeals recognized that, on the one hand, the State's Motion *in limine* stated that D.C. "purport[ed] to have been at [Callioux's] home *every weekend* [M.R.Y.] was there" and "state[d] that because she was present every weekend [M.R.Y.] was present that [Callioux] could not possibly have sexually abused [M.R.Y.]." Dkt. 11-1 at 18, Ex. 2 (emphasis in original). On the other hand, the state court stressed that, according to the certification of probable cause, "D.C. stated during her interview that 'she would *pretty much* spend the night with [M.R.Y.] *almost* every other weekend when [M.R.Y.] was with [Callioux]." *Id*. at 25 n.2 (emphasis in original).

1   Thus, when determining counsel was not effective, the state court did not make a decision
2   deemed contrary to, or an unreasonable application of, clearly established federal law.
3   Accordingly, the Court recommends that this ground for relief be denied.

### III.     EVIDENTIARY HEARING

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). A hearing is not required if the allegations would not entitle Petitioner to relief under § 2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id*. Further, the Supreme Court in *Shinn* held that when reviewing a federal habeas petition under 28 U.S.C. § 2254, the federal court may not consider any facts beyond the factual record presented to the state post-conviction relief court – unless one of the limited exceptions of 28 U.S.C. § 2254(e)(2) applies. *Shinn v. Ramirez*, 596 U.S. 366, 382 (2022).

The Court finds it is not necessary to hold an evidentiary hearing in this case because, as discussed in this Report and Recommendation, Petitioner's claim may be resolved on the existing state court record.

### IV.     CERTIFICATE OF APPEALABILITY

A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability may issue . . . only if the [petitioner] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

No jurist of reason could disagree with this Court's evaluation of Petitioner's claim or would conclude the issue presented in the Petition should proceed further. Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect to the Petition.

### V.   CONCLUSION

For the above stated reasons, the Court concludes Petitioner has not shown the state courts' adjudication of the sole ground raised in the Petition was contrary to, or an unreasonable application of, clearly established federal law. Additionally, an evidentiary hearing is not necessary. Therefore, the Court recommends the Petition be **DENIED** and a certificate of appealability not be issued.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted).

//

//

Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on November 18, 2024, as noted in the caption.

Dated this 4th day of November, 2024.

Grady J. Leupold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13